UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA                    :

VS.                                          :        NO. 3:25CR49 (KAD)

JAMES PAGLIARO                               :        APRIL 28, 2026

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Introduction

The following discussion of points of authority are submitted on behalf of James Pagliaro to aid the Court in fashioning a sentence that is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence, satisfy the need fo the sentence to avoid unwarranted disparity, and to provide restitution. 18 U.S.C. §3553(a). It is respectfully submitted that because of the presence of several mitigating factors and circumstances which are part of Mr. Pagliaro's history and characteristics, a sentence within the guideline range would be "greater than necessary" to accomplish these purposes. Accordingly, Mr. Pagliaro believes that pursuant to the parsimony clause, which is the overarching principle in sentencing, a sentence of between 10 and 15 years would satisfy all of the purposes of sentencing.

History of the Case

The defendant's criminal activities with minor young women occurred over the internet and texting, and in one case, (MV1) at least three sexual encounters in Connecticut. PSR 40. The four minor victims,, as discussed in the PSR, were 15-16 years old, and the defendant was 26. It is clear that the defendant knew the girls' ages

and that they were aware of his age. The girls would send him pornographic photos and videos of themselves and would, upon his demand, engage in master-servant language and behavior.

Under Booker and Crosby, the factors set forth in 18 U.S.C. §3553(a), including the Sentencing Guidelines, should each be considered by the Court. No one factor in 3553(a) is elevated to a presumptively controlling weight. The Guidelines are more than "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." Crosby, 397 at 113-114. However, they are not the controlling factor, more important than all–or any–of the factors listed in 3553(a). After considering the Guidelines, the sentencing judge may impose either a guideline sentence, including one taking into account the departures or a non-guideline sentence. Id at 113. Section 3553(a) requires the Court to impose a sentence "sufficient, but not greater than necessary," to promote the purposes of a fair sentencing. Under Booker, "[s]ection 3553(a) remains in effect, and sets forth the numerous factors that guide sentencing". Booker, 125 S.Ct. 766. Those factors include:

1.  The nature and circumstances of the offense and the history and characteristics of the defendant.

2.  The need for the sentencing imposed–

    A.  To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    B.  To afford adequate deterrence to criminal conduct;

    C.  To protect the public from further crimes of the defendant;

    D.  To provide the defendant with needed educational and vocational training,

medical care or other correctional treatment in the most effective manner.

3.   The kinds of sentences available;

4.   The kinds of sentence and the sentencing range established for:

A.  The applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines;

i.  Issued by the Sentencing Commission pursuant to §994(a)(1) of the Title 28, United States Code, subject to any amendments made to such Guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission went into amendents issued under §994(p) of Title 28); and

ii.  That except as provided in §3742g are in effect on the date the defendant is sentenced; or

B.  In the case of a violation of probation or supervised release, the applicable Guidelines or policy statements issued by the Sentencing Commission pursuan to §994(a)(3) of Title 28, United States Code, taking into account any amendments made to such Guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under §994(p) of Title 28);

5.   Any pertinent policy statement–

A.  Issued by the Sentencing Commission pursuant to §994(a)(2) of Title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under

§994(p) of Title 28); and

B. That, except as provided in §3742(g), is in effect on the date the defendant is sentenced.

6.    The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7.    The need to provide restitution to pay any victims of the offense.

Parsimony Clause

The defendant requests that this Court consider the implications of the *parsimony clause* in determining an appropriate sentence in this case. It is unquestionably true that, under the mandatory guidelines, some required sentences are much too harsh and draconian in nature. Prior to the mandate in Booker and its progeny, courts had very little opportunity to depart from the guidelines since certain relevant factors were excluded as departure considerations.

Post-Booker, courts can now issue a non-guideline sentence in such situations which the defendant is asking the Court to do in this case. Before discussing the facts and circumstances of this case and the defendant's request for parsimony, a short historical analysis of the *parsimony clause* will help put this all into perspective.

The one congressional command in 18 U.S.C. §3553(a) is that district courts must impose a sentence that is sufficient, but not greater than necessary, to comply with the specified purposes of punishment. This statutory language is an eloquent distillation of one of the most long-established and influential maxims in criminology: The Principle of Parsimony. That principle, which provides that punishment should *never* exceed the minimum necessary to effect its purposes, has deep roots in ,

4

American soil.

The principle of parsimony has now taken on new significance in light of Booker, Gall, Rita and Kimbrough.[1] By excising a conflicting command in 18 U.S.C. §3553(b)(1), that district courts must follow the sentencing guidelines, the remedial majority in Booker left the principle of parsimony as the sole binding substantive feature of the statutory sentencing scheme. Federal courts must follow that congressional command at every step of the sentencing process just as seriously as they were required to follow the guidelines before Booker.

## The Guideline Range is not Presumptively Reasonable

The guidelines range, once found, should be the starting point and initial benchmark. Gall v. United States, 552 U.S. at 49. However, the guidelines are not the only consideration, a district court judge must also consider all of the 3553(a) factors. Id. In doing so, the district court may not presume that the guidelines range is reasonable. Id at 50; See also, Rita v. United States, 551 U.S. at 351; United States v. Figueroa-Taveras, 287 Fed. Appx. 947, *2 (2d Cir. 2008).

In addition, an appellate court may not demand "extraordinary" circumstances to justify a non-guideline sentence. United States v.Jones, 531 F.3d 163, 171 (2d Cir. 2008)(Quoting Gall v.United States, 128 S.Ct. At 596). Nor may the district court emply a "rigid mathematical formula" based upon "the percentage of a departure as the standard for determining the strength of the justifications required for a specific

---

[1]Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed. 2d 445 (2007); Rita v. United States, 551 U.S. 338, 127 S.Ct. 2456; 168 L.Ed. 2d 203 (2007; Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558, 574, 169 L.Ed. 2d 481 (2007).

sentence". Id. Such review standards are not simply unhelpful to identifying unreasonable sentences; they are constitutionally suspect, "coming too close to creating an impermissible presumption of unreasonableness for sentenced outside the guidelines." Id.

In light of the foregoing, the Second Circuit cautioned that judges should continue to "reduce unwarranted disparities", and they should now be able to achieve "more individualized justice". United States v. Crosby, 397 F.3d at 113-114. The principle of parsimony is extremely important in this sentencing. The defendant urges this Court to consider the implications of a guidelines sentence in this case, especially since the guidelines range found in the PSR is greater than necessary to achieve the sentencing goals outlined in 3553(a).

The History and Characteristics of the Defendant

James Pagliaro was born on June 27, 1998, and he is one of two children of Penny Pagliaro and James Pagliaro. He has three half siblings through his mother. His father passed away last year after a long illness and while James was incarcerated. His parents divorced when he was five years old. His mother remarried, and he had an acrimonious relationship with his stepfather. The relationship with the stepfather during his adolescent years involved physical abuse. PSR at 110. During those same years and because of Mr. Pagliaro's mental health and home environment, he was skipping school and getting high. Id.

More importantly and relevant to the instant offense, Mr. Pagliaro was sexually abused by a babysitter when he was 11. When he was 13, he was again abused by a 17 year old. OSR at 111-112. Out of shame or fear of reprisals, he internalized these

6

experiences and never told anyone. Id. He also became involved with alcohol and cocaine at an early age, and this continued up to the time of his arrest in 2025. Id at 112.

He moved frequently during his youth and continued to live with his mother, until age 24, or almost to the time of his arrest. Id.

It would appear that the only person he was ever close to was his brother, Luigi. Id at 115.

While the environment in which he grew up may not be the worst even described to this Court, it was probably a contributing factor to the instant offense. Classmates or acquaintances were shot or stabbed. Id at 116.

His mother provides a useful insight into Mr. Pagliaro's character. She describes him as "kind". Id at 117. He struggled over her divorce and the arrival of a stepfather. Although his grandmother and father died shortly after Mr. Pagliaro's arrest, their physical deterioration impacted his mental health long before their demise. His father died a slow death from cancer, and it occurred during the time he was committing the instant offense.

More importantly, he has no prior convictions or arrests, nor did he commit crimes such as this before he resorted to the internet seeking young women.

He worked at low end jobs for years after high school. Id at 117. Fortunately, his mother still loves James and will support him in any way she can during his incarceration. It would appear from the PSR that she is all he has.

A possible explanation for his abhorrent behavior during the instant offense, can also be found in paragraph 118 of the PSR. His introduction to sex at 15 involved much

the same unusual sexual activities that he engaged in or tried to engage in in this crime. PSR at 118.

It is ironic and sad that at age 15, he was subjected to the same type of sexual activities by an older person that he then engaged in as a 25 year old. Id at 118.

While drug and alcohol abuse does not justify his crime, it is a contributing explanation. Id at 121. He was drinking eight to ten shots a night and "blacked out". Id at 121. Also, he was consuming 3.5 grams to an ounce of cocaine a week. Id at 125.

One has to wonder whether Mr. Pagliaro would be before this Court today if he had been receiving treatment for depression, anger, and alcohol and drug abuse. Judging from the PSR, no one ever saw or treated him or was it recommended that he needed treatment.

Dr. Meisler's report has been attached, and the Court will hopefully give weight to his finding. In short, Dr. Meisler, a Yale medical school psychologist, describes the nature of his "psychiatric disorder". Id at 121. Dr. Meisler informs the Court that the illness "paraphilias" caused the "highly addictive and severely compulsive nature of his behavior and the harm it caused". Id at 127. He holds out a strong probability that Mr. Pagliaro will not offend if he receives the appropriate mental health treatment.

<u>The Need for the Sentence Imposed §3553(a)(2)</u>

The defendant contends that a sentence as asked for above would certainly reflect the seriousness of the offense considering the fact that the defendant has never been arrested, let alone convicted, of any crime prior to this matter. He has been almost continuously employed since graduating from high school.

As he sits incarcerated, Mr. Pagliaro has had much time to review his conduct

8

and what has placed him in front of this Court. He has enrolled at Wyatt in every remedial course available and has spent countless hours, on his own, engaging in individual self-help counseling. As Mr. Pagliaro has told the undersigned, participating in self-help courses is about all he does and consumes almost all of his time at Wyatt.

B.    To Afford Adequate Deterrence to Criminal Conduct

Considerations of general deterrence, required under this section, mandates that the Court consider the extent to which similarly situated potential offenders will be deterred from committing similar crimes by whatever sentence the Court imposes in this particular case. This is, however, a highly unpredictable exercise. It assumes that a person in the defendant's position considering whether to commit a crime weighs the consequences of getting caught and further weighs the benefits against incremental risks of prison sentences of particular terms. However, most persons would not commit the crime at all if they thought they would be caught, regardless of the punishment.

Further, it is impossible to conclude that somewhere along the range of "just" punishment there is a tipping point, a point beyond which a rational potential offender will conclude not to become involved in that offense due to the sentence in this offense. In any event, the Court can readily conclude that any reasonable sentence imposed will not serve materially different purposes as it relates to general deterrence. It is, therefore, without question that a 10 to 15 year sentence will afford the same deterrence as any other sentence.

It is safe to say that Mr. Pagliaro has been specifically deterred already. He has lost his liberty and all his life savings. In addition, anyone who knows Mr. Pagliaro, or anyone who has heard of his predicament is much less likely to commit a crime,

especially anything involving teenage girls. At first glance, it is easy for anyone to see the devastation that his arrest, conviction, and incarceration have had on Mr. Pagliaro. Thus, a 10 to 15 year sentence will ensure that general deterrence is also satisfied.

C.    To Protect the Public from Further Crimes of the Defendant

Dr. Meisler opines that if Pagliaro continues taking remedial courses and treatment, he is a low risk of recidivism.

D.    To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

Prior to Mr. Pagliaro being convicted in this action, he was gainfully employed. Thus, it would appear that no further employment or vocational training is warranted. However, there is no doubt that the defendant's felony conviction will hinder his ability to seek and obtain employment when he is released from incarceration. The requirement that he register as a sex offender will make employment doubly difficult. Hopefully, he will be able to avail himself of college courses, as well as vocational training in an effort to make himself more employable when he reintegrates back into society.

Therefore, in regards to this factor and the Court's parsimony obligations, a mandatory minimum sentence of 10 to 15 years would satisfy the purposes of sentencing.

E.    Restitution

The defendant understands that the law requires him to make full restitution to the victims for their mental health expenses. He will honor this obligation upon release to the best of his ability. The undersigned only found out within the past few days that

bank accounts between $45,000 and $50,000 may still be available. If so, most of that money will be forthwith turned over for restitution.

Upon his release, the defendant respectfully requests that he be allowed to pay off the balance at a rate of 5 percent of his monthly earnings and that he be required to see full time employment.

Conclusion

James Pagliaro stands before the Court after pleading guilty. He has no prior convictions or arrests, nor any behavior, other than relevant conduct, which could be considered criminal.

Based upon Dr. Meisler's report and the honest, straightforward letter of apology, Mr. Pagliaro is not likely to offend again. Exhibit D. His mother, uncle, and stepfather have also described him in a way that is not consistent with the crimes to which he has pled. Exhibit B. He is not likely to recidivate in light of all the courses he has taken and the mental health treatment for the first time. Exhibit C.

With the concept of parsimony firmly in hand, this Court must weight in all of the §3553(a) factors. No matter what sentence this Court imposes, he will be gone from society for a long time. As a convicted child molester, the conditions of his confinement as well as his life upon release, will be miserable and more onerous as compared to the usual defendant charged with a drug offense.

A sentence of 10-15 years will be "sufficient but not greater than necessary" to accomplish the purposes of sentencing".

Respectfully submitted,
DEFENDANT, JAMES PAGLIARO


By:_____ */s/ Richard S. Cramer*_____
         Richard S. Cramer
         185 Asylum Street
         Hartford, CT 06103
         Tel. 860.402.5927
         Federal Bar #ct00016

## CERTIFICATION

Pursuant to the Court's designation of this matter as an electronically filed case, and in accordance with the requirements for certification of service in such cases, the undersigned certifies that the foregoing document was filed electronically on the 28th day of April 2026.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

_/s/ Richard S. Cramer_
Richard S. Cramer